```
     IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

       MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


SHEKELA JONES,                 )
                               )
     Plaintiff,                )
                               )    CIVIL ACTION NO.
     v.                        )      2:23cv531-MHT
                               )         (WO)
LOTTE CHEMICAL ALABAMA         )
CORP.,                         )
                               )
     Defendant.                )
```

OPINION AND ORDER

Plaintiff Shekela Jones filed this lawsuit against her former employer, defendant Lotte Chemical Alabama Corporation. She claims that during her employment she was subjected to a hostile-work environment, discriminated against based on her sex, and wrongfully retaliated against for reporting discrimination, all in violation of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C. § 2000e et al. She also asserts several state tort claims, including assault and battery, invasion of privacy, outrage, and negligent and wanton hiring, training, supervision, and retention. The court

has jurisdiction over her federal Title VII claims under 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331, and supplemental jurisdiction over her state tort claims under 28 U.S.C. § 1367.

This lawsuit is now before the court on the company's partial motion to dismiss, seeking the dismissal of one of Jones's Title VII claims, her discriminatory-discharge claim.  For the reasons explained below, the motion will be denied.

### I.   STANDARD ON MOTION TO DISMISS

Lotte Chemical moves to dismiss Jones's discriminatory-discharge 'claim' because the administrative 'charge' of discrimination she filed with the Equal Employment Opportunity Commission (EEOC) did not properly invoke this claim.  Or to put it another way, the company asserts that Jones has failed to exhaust the required administrative procedures as to this claim.  The company bases its motion on Federal Rule of Civil Procedure 12(b)(6).

However, subpart (b)(6) of Rule 12 is not a proper basis for such a defense. The subpart provides for the assertion of the defense "of failure to state a claim for relief," Fed. R. Civ. P. 12(b)(6), and it does not include the defense of failure to exhaust administrative remedies. Also, the remainder of subpart (b) of Rule 12 does not provide for assertion of a failure-to-exhaust defense. *See generally* Fed. R. Civ. P. 12(b).

Nevertheless, that motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic. *See Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). "Federal courts ... traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules." *Id.* For instance, courts may decide motions to dismiss that are "closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration." *Id.* The exhaustion-of-administrative-remedies defense is regarded as "a matter of judicial administration." *Id.*

3

Admittedly, typically to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 2007). But the court's consideration of the exhaustion motion is not subject to the same limitations about what factual material may be considered under Rule 12(b)(6) motions. *See Bryant*, 530 F.3d at 1375-76. "In other words, the court is not restricted to the four corners of the complaint," and can consider outside material, like EEOC charges and supporting affidavits. *Phifer v. Hyundai Power Transformers USA*, 522 F. Supp. 3d 1102, 1107 (M.D. Ala. 2021) (Thompson, J.).

## II. BACKGROUND

The allegations in this case are as follows.

Jones was assigned to work as a forklift driver at Lotte Chemical in May 2022. Almost immediately after

beginning work at the company, her male supervisor, Melvin Robinson, who had had previous complaints of sexual harassment by other employees, began sexually harassing her.  He continuously made sexual advances and comments to her, all of which were rejected.  He rubbed, touched, grinded, and bumped against her.  He backed her into a corner and told her to grab his penis and feel how long it was.  He grabbed her hand and put it on his penis.  He told her he would make her a team leader if she went to a camera-less warehouse with him.  She refused.

Approximately a week into working at the company and being harassed daily by Robinson, Jones complained to the company's Human Resources (HR) Supervisor, Seunghee Kang.  As a result, the company began an investigation process through Kang.  The company also moved Jones to the other side of the warehouse.  But despite being moved, Robinson continued to harass her--through continuous stares and threatening gestures.  At some point, Jones was told by a coworker that she needs to "be careful" because Robinson said that he was going to get her fired.  EEOC

5

Charge (Doc. 1-2) at 3. Other employees who witnessed the harassment also reported it to HR. Then, on June 27, 2022, roughly a month into work at the company, Jones filed a police report concerning Robinson's sexually harassing her. *See* Complaint (Doc. 1) at 5. That same day, the company terminated Jones. *See* EEOC Charge (Doc. 1-2) at 3. Robinson maintained his employment.

On August 19, 2022, Jones filed a charge of discrimination with the EEOC. In her charge, she checked the box for discrimination based on sex. She also checked the box for discrimination based on "other" and wrote "Gender & Sexual Harassment." *Id*. Attached to her charge was a copy of the police report and an affidavit providing the "particulars of [her] charge of discrimination." *Id.* The affidavit essentially states the facts as previously relayed here. *See id.* at 2–3. It concludes with this: "I am a victim of sexual harassment and gender discrimination ... by unjustly suffering sexual harassment and by the termination of my employment after my complaints of sexual harassment." *Id.* at 3.

6

Her EEOC charge went unanswered for nearly a year. Then, on July 11, 2023, the EEOC issued a determination stating that it will take no further action and notifying her of her right to sue within 90 days. *See* EEOC NRTS (Doc. 1-3). The EEOC's notice does not provide any insight into what it viewed as the scope of her charge or what it investigated, if anything. *See id.*

But Jones's charge was not the only charge the EEOC received regarding the factual circumstances surrounding her termination at the company. Months after Jones was terminated, HR Supervisor Kang, who was responsible for investigating Jones's harassment complaint, filed her own EEOC charge against the company. That charge was later amended. In it, Kang states that Jones was fired by the company's then-President Younho Cho.

Kang states that President Cho told her, in reference to Jones: "What is up with that fat black lady forklift driver? ... I don't understand why they hired a woman for a forklift operating position." Complaint (Doc. 1) at 6. When Kang originally forwarded Jones's complaint of

7

harassment to Cho, Cho immediately told Kang: "[F]ire Shakela [sic] Jones right now. Women indeed are problematic." *Id.* at 7. According to Kang, Cho was told by HR to demote Robinson and train him about sexual harassment. In response, Cho said, "How dare that [HR] woman give me orders? This is ridiculous." *Id.* Cho ultimately fired Jones and instructed Kang to never accept female forklift candidates from then on. *See id.*

Jones timely initiated this lawsuit on September 8, 2023, two months after Kang amended her EEOC charge against the company. Jones's complaint includes factual allegations from Kang's EEOC charge that were not in Jones's EEOC charge, including the above statements made by Cho to Kang, the fact that Cho fired Jones, the fact that Jones was the only female forklift operator during her employment, and the fact that she was replaced by a male after her termination. *Compare* Complaint (Doc. 1) *with* EEOC Charge (Doc. 1-2).

8

## III. SCOPE-OF-EEOC-CHARGE REQUIREMENT

To bring suit under Title VII, a plaintiff must exhaust administrative remedies by timely filing a charge with the EEOC.  *See Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  Here, Jones filed such an administrative charge, and then filed her complaint in this lawsuit after receiving a notice of her right to sue from the EEOC.  But Lotte Chemical argues that her complaint includes a discriminatory-discharge claim that was *not* within the scope of her EEOC charge, and that she therefore did not properly exhaust administrative prerequisites for filing that claim.  Thus, the question presented is whether Jones's discriminatory-discharge claim, which alleges that her sex was at least a motivating factor for termination, is within the scope of her EEOC charge.

The purpose of Title VII's administrative-exhaustion requirement is to give the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary

9

compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  This requirement does not mandate that the claim in plaintiff's complaint be identical to the instigating EEOC charge.  *See id.*  Instead, to determine whether a claim's allegations are sufficiently related to plaintiff's charge, the central question is whether the claim is "like or related to, or grew out of, the allegations contained in [the] EEOC charge."  *Id.* at 1280.  To be so related, the claim must fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge."[1]  *Id.*

---

1. The former Fifth Circuit Court of Appeals has explained: "The logic of this rule is inherent in the statutory scheme of Title VII.  A charge of discrimination is not filed as a preliminary to a lawsuit.  On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.  Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law.  Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action.  Thus it is obvious that the civil action is much more intimately related to the EEOC investigation

10

When determining what claims fall within the scope of the EEOC investigation, the charge "should not be strictly interpreted." *Id.* Nonetheless, the "facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge; the legal theory the charging party articulates is far less important." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022). That means box-checking a certain claim or using conclusory buzzwords may not sufficient absent some factual basis. *See, e.g., Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000). An EEOC charge's facts may clearly point at one type of Title VII claim, but that does not preclude those facts from also supporting an

---

than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

11

investigation into another type. *See Patterson*, 38 F.4th at 1345.

Here, Jones's discriminatory-discharge claim is properly brought in the complaint because it is "like or related to, or grew out of, the allegations contained in [the] EEOC charge." *Phifer*, 522 F. Supp. 3d at 1108 (quoting *Gregory*, 355 F.3d at 1280). First, Jones checked the box for sex discrimination, while not checking the boxes for age, or race, or retaliation, or national origin discrimination. Second, her charge concludes that she is a "victim of sexual harassment and gender discrimination ... by unjustly suffering sexual harassment and by the termination of [her] employment after [her] complaints of sexual harassment." EEOC Charge (Doc. 1-2) at 3. This statement can be reasonably read to include retaliation, harassment, and discriminatory-discharge claims. Thus, so far, the thrust of the charge's allegations is related to sex and gender discrimination that culminated in her termination.

12

Importantly, the facts included in paragraphs 1-11 of Jones's EEOC charge confirm that the charge's investigatory scope would reasonably include a sex-based discriminatory-discharge claim.  The charge alleges: (1) while in the workplace, a female employee was sexually harassed and sexually assaulted by a male supervisor who had a history of sexual harassment complaints against him; (2) the company received a formal complaint about that sexual harassment; (3) the company investigated that complaint via an HR representative; (4) the company failed to separate the male harasser from the female complainant in the workplace; (5) multiple other witness reports were made to HR about the ongoing harassment; (6)  the male harasser threatened that he was going to have the female complainant fired; (7) the female complainant filed a police report against the male harasser; (8) the company terminated the female complainant for unspecified reasons immediately after she filed the police report; and (9) the company retained the male harasser.  *See generally* EEOC Charge (Doc. 1-3).

13

Under those facts, when viewed in tandem with the charge's explicit factual assertion of sex-based discrimination that ended in termination, the scope of an EEOC investigation would reasonably capture a claim that Jones's termination was motivated, at least in part, by her sex.

Lotte Chemical responds that Jones failed to exhaust her discriminatory-discharge claim because her EEOC charge contained (1) no allegations about similarly situated comparators from which to infer discrimination or employer's statements of sex-based animus, and (2) no allegations about who decided to fire Jones or who replaced Jones.  *See* Reply Brief (Doc. 12) at 4.  But none of those factual particulars are required at the charging stage.  Indeed, neither *McDonnell-Douglas* comparators nor statements of gender animus are necessary to proving a sex-discrimination claim.[2]  *See Smith v.*

---

2. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (explaining one type of prima facie case for proving discrimination, which involves showing more favorable treatment to "similarly situated comparators" outside of plaintiff's protected class).

14

*Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[T]he *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case.").

Nor does the absence of the other facts the company highlights (like decision-maker identity) eliminate a discriminatory-discharge claim from the scope of the charge given the facts that were in the charge. As stated, the charge alleges that Robinson, the male harasser, was Jones's supervisor and that he told one of Jones's coworkers that he was going to get Jones fired. *See* EEOC Charge (Doc. 1-2). Those facts indicate that Robinson had either formal decision-making authority or that he had the ability to use a decisionmaker as a "cat's paw" to exact his discriminatory animus. *Llampallas v. Mini-Cirs., Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) ("when the harasser in a Title VII case is not the decisionmaker, if the plaintiff shows that the harasser employed the decisionmaker as his 'cat's paw'--i.e., the

15

decisionmaker acted in accordance with the harasser's decision without himself evaluating the employee's situation--causation is established") (citation omitted).

So, while there may be no *McDonnell-Douglas*-type similarly situated comparator allegations in the charge, there are allegations that a male supervisor who engaged in daily sexual harassment against a woman may have been the person who functionally terminated the woman he was sexually harassing. Those facts create a reasonable expectation that the investigatory scope would include whether the male harasser may have fired the woman he was sexually harassing because he harbors discriminatory animus against women. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (explaining that harassing conduct that is "sexual in nature," can show a harasser's discriminatory animus in the absence of comparators). Contrary to Lotte Chemical's overarching theme, the discriminatory-discharge facts in Jones's EEOC

16

charge go well beyond buzzwords and checked boxes. The company's partial motion to dismiss will be denied.

One final point. Jones's complaint alleges (1) that a substantial amount of probative discriminatory-intent evidence was uncovered *after* Jones filed her initial charge, and (2) that a reasonable investigation into her charge would have likely uncovered that evidence.[3] Plf's Response (Doc. 11) at 6. Because consideration of what facts were actually discovered after Jones filed her

---

3. As stated in the background, after Jones filed her charge, the HR employee who investigated her complaint of sexual harassment told the EEOC that Lotte Chemical's President said:

- (1) "What is up with that fat black lady forklift driver? ... I don't understand why they hired a woman for a forklift operating position."

- (2) "[F]ire Shakela [sic] Jones right now. Women indeed are problematic."

- (3) "How dare that [HR] woman give me orders? This is ridiculous."

(Doc. 1) at 6–7. Jones argues that an EEOC investigation based on her charge, even if it focused on only retaliation, would necessarily have uncovered this evidence because a reasonable investigation into a retaliatory motive would have included, at bare minimum, asking the HR investigator why Jones was terminated.

17

charge are not necessary to resolving the motion, it is not necessary to consider them. The court's exhaustion analysis begins and ends with the law and facts included in Jones's initial charge of discrimination. *See Sanchez*, 431 F.2d at 462 ("[T]he crucial element of a charge of discrimination is the factual statement contained therein.").

A sex based discriminatory-discharge claim was like, related to, and could have predictably grown out of the facts included in Jones's initial EEOC charge, even without considering the evidence discovered after she filed her charge. Therefore, her discriminatory-discharge claim is appropriately asserted as a judicial claim now. *See Gregory*, 355 F.3d at 1280.

***

Accordingly, it is ORDERED that defendant Lotte Chemical Alabama Corporation's partial motion for dismissal (Doc. 6) is denied.

DONE, this the 29th day of March, 2024.

                                            /s/ Myron H. Thompson
                                     **UNITED STATES DISTRICT JUDGE**